**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles P. SMITH, Jr., Defendant-
Appellant.**

**No. 71–1579.**

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1972.

Decided Sept. 22, 1972.

John Donald O'Shea, East Moline, Ill., for defendant-appellant.

Donald B. Mackay, Springfield, Ill., Max J. Lifkin, Peoria, Ill., for plaintiff-appellee.

Before STEVENS, Circuit Judge, DURFEE,* Senior Judge, United States Court of Claims, and ESCHBACH,** District Judge.

ESCHBACH, District Judge.

Defendant, Charles P. Smith, Jr., was indicted and convicted after a trial by jury of making an obscene, indecent, or profane radio communication in violation of 18 U.S.C. § 1464.[1] Defendant Smith appeals from that single-count conviction and has presented the following contentions for review:

(1) Title 18 U.S.C. § 1464 on its face runs afoul of the First Amendment in failing to require *scienter* and in punishing profane or indecent utterances, and such statute is so vague as to be violative of the Fifth Amendment.

(2) The indictment in the present case was insufficient for the same reasons, rendering the statute as applied unconstitutional.

(3) The trial court's refusal to define "profane" or "indecent in its instructions to the jury coupled with the refusal to instruct the jury that they could not find the defendant guilty if they merely found his alleged utterance to be profane or indecent was reversible error.

(4) The evidence is insufficient to sustain defendant's conviction of obscenity under 18 U.S.C. § 1464.

(5) Certain out-of-court voice identifications violated defendant's Fifth and Sixth Amendment rights.

(6) The trial court erred in refusing to instruct on defendant's theory of defense concerning entrapment.

We have concluded that the court below erred in failing to instruct the jury on the necessity of finding *scienter* as an essential element of 18 U.S.C. § 1464, and we therefore reverse and remand for further proceedings not inconsistent with this opinion.

In Tallman v. United States, 465 F.2d 282, 7th Cir., 1972, a related case to the one now before us, this court had occasion to pass upon many of the arguments now voiced by the petitioner. Tallman had been convicted under 18 U.S.C. § 1464 and was seeking to have his sentence vacated under 28 U.S.C. § 2255. Tallman contended, as does the petitioner here, that § 1464 is unconstitutional on its face and as applied in the indictment through its failure to require *scienter;* that the statute and indictment were violative of the First and Fifth Amendments in attempting to punish profane or indecent utterances; and that the trial court erred in failing to define the terms "profane" or "indecent," and in failing to instruct the jury on the requirement of *scienter.*

■■■ In *Tallman, supra,* this court concluded that *scienter* is a pertinent and necessary element for conviction under § 1464 and that reading such required mental state into the statute cured it of any constitutional defects under either the First or Fifth Amendments. *Tallman,* sl. op. *supra* at 285.

* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

** District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

1. 18 U.S.C. § 1464 provides:

"Whoever utters any obscene, indecent, or profane language by means of radio communication shall be fined not more than $10,000 or imprisoned not more than two years, or both."

*See also* Gagliardo v. United States, 366 F.2d 720, 724 (9th Cir. 1966). This court further found that § 1464 was not facially void because it employed the terms "indecent" or "profane," since the statutory use of the term "indecent" had been upheld against constitutional attack in Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and the term "profane" was inferentially approved in Chaplinsky v. New Hampshire, 315 U.S. 568, 572–573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Although the court in *Tallman, supra,* found the petitioner there to be ill-postured to directly attack the indictment, the court did state that the omission of the requirement of *scienter* in the indictment was not error in view of the court's holding that *scienter* was a necessary element for conviction, which element must be proved by the prosecution, and the jury charged that a finding of *scienter* is necessary for conviction. *See* United States v. Martell, 335 F.2d 764, 765 (4th Cir. 1964); Delaney v. United States, 199 F.2d 107, 117 (1st Cir. 1952); United States v. Zacher, 332 F. Supp. 883, 885 (E.D.Wis.1971).

The conclusions reached in *Tallman, supra,* concerning the constitutional challenge to § 1464 on its face and as applied through the indictment are dispositive of that portion of appellant's challenge here.

The defendant here further argues that the failure of the trial court to properly instruct the jury on the requirement of *scienter* was reversible error. This same argument was urged by the petitioner in *Tallman, supra,* but the court in that case found the instruction given regarding specific intent to have been more than legally sufficient. The trial court in *Tallman, supra,* instructed the jury that they must find the defendant committed the alleged acts "voluntarily, with knowledge that it was prohibited by law and with the purpose of violating the law * * *." Although the instruction given in *Tallman, supra,* concerning specific intent went beyond what was legally required insofar as the jury was instructed that the defendant there must have known his utterances satisfied the legal definition of obscenity, it is clear that the instruction given in the case now before us fell far short of a legally sufficient instruction as to specific intent.

The court below instructed the jury that before the defendant may be found guilty they must find that he "was forbidden to do the act charged in the indictment, and that he intentionally committed the act." It is obvious that the court was merely instructing the jury on general intent. There was no further instruction given charging that in convicting a person of a major crime, such as this one, defendant must have been found to have intended to violate or disobey the law, or that he knew or reasonably should have known he was committing a public wrong. The court in Gagliardo v. United States, *supra,* held, and we agree, that in a conviction for broadcasting obscene language specific intent "is a very pertinent and necessary element." *Gagliardo, supra,* at 724. *Cf.* Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Yet, in this case no such instruction concerning specific intent was given.

In a case such as this, where one is charged with uttering obscene, profane, or indecent language, the defendant will necessarily know the contents of his utterances. We would not state, therefore, that it would be error to omit a charge that defendant must have knowledge of the contents of his utterances, as would be the case if defendant were charged with distributing obscene literature. *See, e. g.,* Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Nor would it be necessary for the jury to find that defendant knew his utterances would satisfy the legal definition of obscenity, as the jury was seemingly charged in *Tallman, supra.* However, *scienter,* or more

appropriately in this case specific intent, is an element of the crime charged, and it was reversible error for the court to refuse to instruct as to that element.[2]

Petitioner further contends that the evidence was insufficient as a matter of law to sustain his conviction of obscenity. After reviewing the evidence presented to the jury and viewing such evidence in the light most favorable to the Government as we must, United States v. Lawler, 413 F.2d 622 (7th Cir. 1969), cert. denied, 396 U.S. 1046, 90 S. Ct. 698, 24 L.Ed.2d 691 (1970), we cannot say the evidence was insufficient to support that verdict of guilty. However, the defendant has also assigned error to the trial court's refusal to define for the jury the terms "profane" and "indecent". Defendant argues that the court's refusal to define those terms coupled with the refusal to instruct that the jury could not find the defendant guilty if they merely find his alleged utterances to be profane or indecent was error in light of the sparsity of evidence tending to prove the obscene nature of the utterances.

■ Defendant here was charged in the indictment with uttering an obscene, indecent, or profane radio broadcast, and the jury was instructed to that effect. The court, however, further instructed the jury that "[a]lthough the indictment includes the words of the statute, namely, the adjectives, obscene, indecent, and profane, the gist of the offense alleged . . . is the charge that the defendant broadcast obscene language." The court thereafter focused on obscenity, instructing at length on its legal definition. In the *Tallman, supra,* case, the petitioner had alleged this same error, *i. e.,* the failure of the court to define "profane" and "indecent." *Tallman, supra,* concluded, however, that the charge to the jury instructing them that the gist of the of-

fense is obscenity prevented any prejudice to the defendant that might arise from omitting those definitions. In that case, however, the court found that "the transcripts of the broadcasts read to the jury show plain filth by any contemporary standards of obscenity, so that there was no need for the jury to determine whether they were also 'indecent' or 'profane.'" *Tallman, supra* at 287. In the present case, we cannot say that the transcripts of the broadcasts show plain filth. In fact, the evidence here would have more appropriately supported a conviction under standards of profanity or indecency rather than obscenity as defined in Roth v. United States, *supra.* In light of this, there is the distinct possibility that merely instructing the jury that the "gist of the offense" is uttering obscene language would not be sufficient to prevent the jury from convicting defendant if they found his alleged utterances to have been profane or indecent, yet not obscene. Therefore, in the event there is a retrial of this cause either the jury should be clearly and unequivocally instructed that the defendant may not be convicted of uttering a profane or indecent radio broadcast, or the terms "profane" and "indecent" should be defined for that jury. *See Gagliardo, supra* at 725.

■ Defendant Smith next contends that certain out-of-court voice identification procedures used by the Government, whereby Government witnesses were asked to listen to a recording of a radio broadcast and identify defendant's voice, violated his Sixth Amendment right to assistance of counsel and his Fifth Amendment right to due process. Defendant first argues that such procedure was violative of his rights because neither he nor his counsel was present during these sessions, and he further submits that such sessions were so unduly suggestive as to be violative of due process.

2. It is noteworthy that the court in *Tallman, supra,* stated that an appropriate instruction as to specific intent under this statute might be that "the defend-

ant knew or reasonably should have known that uttering the words he did over the air was a public wrong." *Tallman, supra* at 288.

Defendant's reliance on that line of Supreme Court decisions requiring the presence of counsel at post-indictment pre-trial "line-ups" is somewhat misplaced. *See e. g.,* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18. L.Ed.2d 1178 (1967); Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We do not find the "line-up" or "show-up" cases to be sufficiently analogous to require the presence of counsel in this context. The purpose of the typical line-up is to exhibit the accused to witnesses for identification purposes. In this case, the identity of defendant Smith as one who made a broadcast was never in issue. The purpose of playing these recordings to the witnesses who were present during the original broadcast was merely to avoid the necessity of playing the rather lengthy complete tapes at trial.

Even if the so-called out-of-court voice identification sessions were found to be violative of defendant's rights, this would not foreclose these witnesses' in-court identification of defendant's broadcast. These witnesses had all spoken to defendant Smith previous to the broadcast in question, and they all were present during the original broadcast or had listened to such broadcast when made. Therefore, their in-court identification of defendant's voice as the one speaking on the recordings was clearly based upon independent aural observation of the defendant, and the "source" of such identification was not the out-of-court sessions in question. *Wade, supra* at 240, 87 S.Ct. 1926. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); Sewell v. Cardwell, 454 F.2d 177, 180 (9th Cir. 1972). Moreover, it is far from clear from the evidence that any alleged *voice-identification* sessions took place without counsel present during a "critical stage of the *prosecutions.*" Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). There was evidence from which the trial judge could conclude that the actual identifying sessions with these witnesses took place prior to the return of the indictment of October 24, 1968, which point in time "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). *See also* Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Finally, petitioner produced no evidence from which it could be inferred that the out-of-court voice identification sessions were "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See also* Simmons v. United States, *supra*; Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968).

Petitioner finally contends that it was error for the trial court to refuse to submit his tendered instruction presenting his theory of defense as to entrapment. After reviewing the evidence presented, we cannot say the trial court erred in finding there was insufficient evidence to support the submission of such defense to the jury. *See* United States v. Aloisio, 440 F.2d 705, 711 (7th Cir. 1971), cert. denied, 404 U.S. 824, 92 S. Ct. 49, 30 L.Ed.2d 51 (1971); United States v. Markham, 191 F.2d 936 (7th Cir. 1951). This finding, of course, does not foreclose defendant from again attempting to submit such a defense to the jury in the event of a retrial.

Accordingly, the judgment of conviction must be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.