**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Laszalo KOPACSI, Defendant-
Appellant.**

**No. 73-2546
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Don M. Richard, Metairie, La. (Court-appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

BROWN, Chief Judge:

Appellant seeks to have his conviction under 18 U.S.C.A. § 2113(a) and (d) for robbery of a federally insured bank and assault in the course of the robbery reversed on the grounds that the admission of evidence pertaining to a lineup identification and a resulting in-court identification were so suggestive as to deny appellant due process of law. We affirm.

On the morning of September 7, 1972, a man dressed as a postman obtained entry to the Jefferson Bank & Trust Company in Metaire, Louisiana, before the bank had opened for business for the day on the pretext of delivering a certified letter to the bank's president. The postman-impersonator promptly produced a pistol and admitted two other armed accomplices to the bank. Some of the bank's employees were already present when the robbers entered and during the course of the robbery which lasted approximately ten minutes, more of the employees arrived. Several times the postman-impersonator who spoke with a heavy "foreign" accent[1] threatened to kill the bank employees if they did not get the money quickly or if they did not turn around.

Eight months after the robbery, three of the employees who had observed the postman-impersonator at close range and who had heard him speak during the course of the robbery attended a lineup sponsored by the FBI. Each of the six participants in the lineup was required to say "Turn around or I will shoot."

---

1. Two of the three witnesses testified that after the robbery they had told the police that the postman-impersonator spoke with a Spanish accent.

Appellant apparently speaks with a rather thick Hungarian accent.[2] The other five participants in the lineup, who were all members of the FBI, did not speak with any discernable non-New Orleans accent. Each of the three witnesses identified appellant as the postman-impersonator.

Appellant sought to have evidence of the lineup as well as any subsequent in-court identification arising from the lineup suppressed as unduly suggestive and therefore violative of his right to due process of law.[3]

The District Court while acknowledging that appellant spoke with a non-New Orleans accent found that in view of the totality of circumstances surrounding the lineup, the dissimilarity in accents was not likely to present any great threat of misidentification.

The three witnesses were permitted to testify concerning the lineup identification and all three provided in-court identifications of appellant. The admission of this identification evidence is challenged on appeal.

■ Of course, in-court identification from a lineup may be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 1968, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247. This past term in Neil v. Biggers, 1972, 409 U.S.

188, 198–199, 93 S.Ct. 375, 381, 34 L. Ed.2d 401, 409–410, the Court noted:

> "Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. * * * It is the likelihood of misidentification which violates a defendant's right to due process. * * * Suggestive confrontations are disapproved because they increase the likelihood of misidentification. * * *
>
> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

In light of these principles as well as the particular factual circumstances presented by cases of the Supreme Court[4] and this Circuit,[5] we are convinced that the lineup identification in issue was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

From the outset appellant concedes that the only irregularity in the police lineup which might support a finding of

2. Prior to the lineup, appellant's counsel requested that the police refrain from requiring any of the participants to speak because of appellant's accent.

3. Since appellant was represented by counsel at the lineup this case does not involve the Sixth Amendment right to the presence of counsel established by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149.

4. See Neil v. Biggers, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; Coleman v. Alabama, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L. Ed.2d 387; Foster v. California, 1969, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (the only case to date in which the Court has found the identification to be impermissibly

suggestive); Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

5. See, e. g., Robinson v. State of Alabama, 5 Cir., 1972, 469 F.2d 690, cert. denied, 411 U.S. 909, 93 S.Ct. 1539, 36 L.Ed.2d 199; Roper v. Beto, 5 Cir., 1971, 454 F.2d 499, cert. denied, 406 U.S. 948, 92 S.Ct. 2053, 32 L.Ed.2d 336; Ward v. Wainwright, 5 Cir., 1971, 450 F.2d 409 (impermissibly suggestive lineup did not, under the circumstances, affect the reliability of the in-court identification); Crummie v. Wainwright, 5 Cir., 1970, 427 F.2d 135; Crume v. Beto, 5 Cir., 1967, 383 F.2d 36, cert. denied, 395 U.S. 964, 89 S.Ct. 2106, 23 L.Ed.2d 749.

suggestiveness was the dissimilarity between the accent of appellant and the accents of the other lineup participants.

 In identification cases, dissimilarity should not automatically be equated with suggestiveness. Indeed it is the often inarticulable dissimilarities between one individual and the next which make identification possible. A dissimilarity is suggestive only to the extent that it singles out and focuses the attention of the witness on a suspect before the witness has been able to make an independent determination.[6]

All three witnesses testified that prior to and during the lineup, the police made no suggestions concerning any of the lineup participants nor did they indicate that they believed that one of the participants was in fact the criminal. There was testimony that the witnesses were physically separated during the lineup.

It is a matter of record that the six participants in the lineup bore a substantial resemblance to each other both in terms of build and facial characteristics. All were dressed the same, all made the same motions, all spoke the same words.

All three of the witnesses who identified appellant testified that they had an opportunity to observe the postman-impersonator face to face at close range during the robbery. One of the witnesses testified that he had been able to view the robber for as long as five minutes while another viewed him for two minutes. It is undisputed that the bank was well lit. One of the witnesses testified that he had previously been instructed to take careful notice of bank robbers and that he did so on this occasion. The postman-impersonator wore sunglasses but no mask during the robbery.

Of the three witnesses, two testified both at the lineup and at the trial that they were absolutely certain that appellant was the postman-impersonator. The third witness testified that he was not positive but "reasonably sure" that appellant was the man.

All of the Supreme Court cases and the vast majority of Fifth Circuit cases, see notes 4 and 5, *supra,* which have failed to find "a very substantial likelihood of irreparable misidentification" in challenged identification procedures have involved an identification by only one witness. By way of contrast, appellant was identified by three witnesses.

While the eight month lapse between the robbery and the lineup is a factor which must be considered, we do not believe that it significantly detracts from the reliability of the identifications in this case.[7]

The dissimilarity in accents does not significantly increase the risk of misidentification in this case. The participants in the lineup were asked to speak near the end rather than the beginning of the lineup. Although each witness did not tell the police that appellant was the man until after the participants had spoken, all three testified that they were definitely convinced that appellant was the postman-impersonator before any of the participants spoke.[8] Thus the dis-

6. This is the danger when a one man showup (as opposed to the lineup) is held, or where one black is placed in an otherwise all white lineup when the victim has previously stated that the criminal was black, or where the witness sees one of the lineup participants singularly in the custody of the police prior to identification. See United States v. Johnson, 5 Cir., 1972, 461 F.2d 1165.

7. In *Biggers*, while holding that an identification which occurred seven months subsequent to the crime comported with due process, the Supreme Court noted that a lapse of seven months "would be a seriously negative factor in most cases." 409 U.S. at 201, 93 S.Ct.

at 383, 34 L.Ed.2d at 412. The Court seemed to find, however, that the absence of any prior identifications by the victim during this period preserved the victim's "record for reliability" and counter-balanced the time lapse. In the present case only one of the three witnesses was able to identify a photograph of appellant at a photograph showing preceding the lineup. The other two witnesses did not select any of the photographs.

8. The witness who was unable to positively identify appellant testified that he had settled on appellant before the participants spoke.

tinctive quality of appellant's voice only served to reinforce the initial identification.

Appellant and four of the five FBI agents who participated in the lineup testified before the District Judge. The District Judge found that:

"While he [appellant] does possess what might be said to be a non-New Orleans accent, I dare say that his accent doesn't differ more from the average English accent than I could find in New Orleans in different neighborhoods . . . . In fact, I dare say the accents of Mississippians and some northern Louisianaians, and Texans differ far more from the New Orleans accent than his accent differs from the average New Orleans accent. I just don't think it's overly suggestive, * * *

I think he speaks clearly. In fact, he speaks excellent English. I think, in fact, that there is really less difference in his accent than perhaps it would be a difference if the man were of French or Cajun descent. * * * I don't think it should necessarily mislead any person who is attempting to act in good faith in connection with the identification of this defendant."

Needless to say, the District Judge was in a far better position to examine the alleged dissimilarities in accents than are we. Under the circumstances of this case it is highly improbable that the dissimilarity in the accents of the lineup participants—despite any possibility of suggestiveness—was likely to precipitate a substantial risk of misidentification.[9]

It has necessarily been recognized that a unique accent or quality of voice may often be helpful if not essential to the proper identification of a criminal suspect. See Roper v. Beto, 5 Cir., 1971, 454 F.2d 499. We do not intimate that under no circumstances might the presentation of a vocal dissimilarity in an identification procedure be so suggestive as to constitute a denial of due process.[10]

 We are compelled to conclude, however, that in view of the totality of circumstances, the District Judge properly admitted the identification evidence.

Affirmed.

---

9. See United States v. Sutherland, 5 Cir., 1970, 428 F.2d 1152, cert. denied, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668, where it is recognized in the context of photographic identification procedures that suggestiveness and likelihood of misidentification are distinct elements each of which must be established to render the identification evidence inadmissible. See also United States v. Evans, 2 Cir., 1973, 484 F.2d 1178 (1973).

10. *Biggers* clearly establishes that the police need not provide laboratory conditions for faultless identification in order to satisfy due process requirements. 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 413.