489 F.2d 802
 UNITED STATES of America, Plaintiff-Appellee,
v.
John C. HENDERSON and Terry Harry Nelson, Defendants-Appellants.
No. 72-2363 Summary Calendar.*
*Rule 18, 5 Cir., Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York, et al., 5 Cir. 1970,
431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 Dec. 17, 1973.
 
 Ian F. Gaston, Mobile, Ala., (Court-Appointed) for Henderson.
 Donald M. Briskman, Mobile, Ala., (Court-Appointed), for Nelson.
 Charles S. White-Spunner, U.S. Atty., Irwin W. Coleman, Jr., Asst. U.S. Atty., Mobile, Ala., for plaintiff ppellee.
 Before WISDOM, AINSWORTH and CLARK, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 John C. Henderson and Terry H. Nelson bring separate appeals from their convictions at a joint trial of robbing a federally insured bank, in violation of 18 U.S.C. 2113(d). Henderson advances four grounds for the reversal of his conviction; Nelson asserts two. We affirm both convictions.
 
 
 2
 The Bank of Brewton in Brewton, Alabama, was robbed on June 8, 1971. At the time of the robbery, the only persons in the bank were Mrs. Bernie May Benton, the Acting Manager of the Bank, and Mrs. Verdi Adkisson, a teller. According to the testimony of both women, two men armed with pistols entered the bank at about 12:13 p.m. on June 8. One of the men stood guard by a big window near the front door, underneath the bank camera; the other went to the teller's cages behind the counter, going first to the one where Mrs. Benton stood, then to the one between that cage and the cage where Mrs. Adkisson stood, and then to Mrs. Adkisson's cage. At each cage this man either took the cash in the drawers himself, or forced the women in the cages to take the money out of the drawers and to stuff it into a bag he was carrying. When Mrs. Adkisson was taking money out of one of the drawers at her cage, she activated the bank camera, which then took a short movie of the remaining moments of the robbery. After he had finished collecting the money, the robber behind the counter forced the two women into the vault of the bank, where he told them to remain until three minutes had elapsed. The entire robbery, according to the testimony of both women, lasted only four to six minutes. An audit of the bank revealed that the robbers had taken about $20,000 from the Bank.
 
 
 3
 After the robbery, FBI and the Brewton police used photographic identification procedures to identify the robbers. On the day of the robbery, FBI agents showed both Mrs. Benton and Mrs. Adkisson about one hundred photographs of persons suspected of bank robbery by the FBI. The photographs did not include a picture of either defendant, and neither Mrs. Benton nor Mrs. Adkisson identified either defendant from those photographs. Shortly after the robbery, both women were shown the movie taken by the bank camera. The film was of extremely poor quality, however, and did not aid the women or the law enforcement officers in identifying the criminals. Within a week after the robbery, the Brewton police showed both Mrs. Adkisson and Mrs. Benton a second photographic spread. This spread consisted of about 10 photographs. Again, pictures of the defendants were not included in this spread, and neither of the women identified the robbers from the spread.
 
 
 4
 On June 19 Mrs. Benton and Mrs. Adkisson identified the defendants from a third photographic spread. On that day, both women were asked to come to police headquarters in Brewton, where FBI agents showed each of them two stacks consisting of six or seven photographs each. Pictures of Nelson and of Henderson were included in these stacks; and both women identified the two as the men who had robbed the bank on June 8. The FBI agents did not tell Mrs. Benton that they had any suspects, and did not indicate to her in any way that they thought the spread included pictures of men they suspected. Mrs. Adkisson apparently had been told that the police had suspects in the case; she was not, however, told when she was shown the spread that it included pictures of the men the police suspected.
 
 
 5
 At a preliminary hearing held June 25, 1971, the two women identified the two men in person. In the time since the women had first identified the men, photographs of Nelson and Henderson had appeared in the local paper and in the Mobile Press Register identifying them as the men suspected of the Brewton robbery. Both women admitted at trial that they had seen those pictures before the June 25 hearing. At the hearing, both Henderson and Nelson were wearing T-shirts. They were the only two men in the room so attired; all the other men were wearing coats and ties. Mrs. Benton positively identified both Nelson and Henderson as the two bank robbers. Mrs. Adkisson positively identified Nelson. She was not positive about Henderson, but thought that he was one of the two.
 
 
 6
 At trial both women positively identified both Henderson and Nelson as the bank robbers. The trial judge held a hearing out of the presence of the jury to inquire into the circumstances of Mrs. Adkisson's identification of the defendants. At that hearing, and later before the jury, Mrs. Adkisson testified that her failure to identify Henderson positively at the hearing had been the result of the fact that the defendant's hair had been darker on the day of the preliminary hearing than it had been on the day of the robbery; she said that by the time of the trial its color had been changed back to the color it had been at the robbery. Neither defendant requested an in camera hearing to inquire into the circumstances of Mrs. Benton's identification of the defendants, and therefore no such hearing was held.
 
 
 7
 The principal point raised by both appellants concerns the propriety of the identification procedures followed by the FBI and the Brewton police. Under Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and the cases following Simmons decided by this Court, e.g., United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152; United States v. Hughes, 5 Cir. 1969, 418 F.2d 1222; United States v. Rogers, 5 Cir. 1972, 455 F.2d 407, the standard for determining whether identification evidence is admissible is whether the police procedures used in obtaining the identification were 'so impermissibly suggestive as to create a substantial risk of misidentification'. Both defendants argue that that standard was met in this case.
 
 
 8
 We cannot agree. Under our decision in Sutherland, the Simmons standard becomes a double test; the district courts are to determine separately (1) whether the procedures followed were 'impermissibly suggestive', and then (2) whether, being so, they created 'a substantial risk of misidentification'. To make these determinations, the district courts, under Sutherland, are to conduct in camera hearings to inquire into the circumstances of challenged identification procedures. Here, the district court complied with Sutherland by conducting such a hearing when the propriety of the procedures surrounding Mrs. Adkisson's identification of the defendants was challenged; he was not asked to conduct a hearing concerning the circumstances of Mrs. Benton's identification. He concluded on the basis of that hearing that the procedures followed here were not impermissible under Simmons and Sutherland. On review, we cannot say that that conclusion was erroneous. To be sure, there were at least two facts indicating either taht the procedures followed were 'suggestive', or that they 'created a risk of misidentification': the fact that Mrs. Adkisson was told that the police had suspects before she examined the photographs on June 19, and the fact both witnesses saw newspaper pictures identifying the two men as the men suspected of the robbery before the preliminary hearing. But it would have been proper for the district judge to conclude that these did not establish that the procedures were impermissibly suggestive, or that they did not establish that those procedures create a substantial risk of misidentification. He did not err, therefore, in admitting the identification evidence.
 
 
 9
 Henderson asserts three other grounds for reversal. First, he argues that the failure of the trial judge to sever the trials of the two defendants constitutes reversible error. He asserts he was prejudiced by the failure to sever by two events at trial. The first was the offer by Nelson's attorney to introduce the photographic spread from which Nelson had been identified. That spread consisted of snapshots of men in ordinary street clothes; the spread that included Henderson's, on the other hand, was a group of police mugshots. Henderson's counsel feared that if Nelson introduced the spread containing his photograph, the jury would infer from the fact that Henderson did not introduce the spread containing his photograph that Henderson had 'something to hide'. He objected therefore to the introduction of Nelson's spread, but the trial judge overruled the objection. The second event was Henderson's attempt to introduce the movie taken at the robbery into evidence. Nelson did not want the movie introduced, and it was excluded on his objection.
 
 
 10
 We cannot find substantial prejudice in either of the events cited by Henderson; neither would have justified a severance. Henderson's counsel did not at the time either of these events took place move for a severance; the only motion made for a severance was made before trial, on grounds other than those Henderson now argues required a severance. The grant or denial of a severance is within the discretion of the trial judge, Opper v. United States, 1954, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101; Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 934-935. We cannot say that the trial judge abused his discretion in failing to order severance sua sponte here.
 
 
 11
 Henderson's third objection is to the trial judge's refusal to permit the movie of the robbery to be introduced. We cannot find reversible error here. The judge stated that he found the film 'so unsatisfactory that I couldn't make anything out of it'. We have viewed the movie in camera, too, and we agree with the trial judge.
 
 
 12
 Henderson's final point is that the trial judge erred in refusing to hold that evidence of certain prior convictions was inadmissible. Henderson never took the stand, and so the convictions in question were never introduced. Henderson contends he was prejudiced by the judge's failure to rule the convictions inadmissible, because he asserts that that failure placed him in a dilemma, having either to refrain from taking the stand, or to take the stand and risk the introduction of evidence of his prior convictions. We doubt that Henderson may raise this contention on this appeal, because although the matter is disputed, it does not appear from the record that he ever made any pretrial motion to suppress evidence of the earlier convictions. But, even assuming he may raise the question, it is settled in this circuit that a defendant is not entitled to a prospective ruling on the admissibility of impeachment evidence before he takes the stand. United States v. Saitta, 5 Cir. 1971, 443 F.2d 830, 831; United States v. Bedgood, 5 Cir. 1972, 453 F.2d 988. It is the defense counsel's responsibility to evaluate the law and plan his strategy based upon his evaluation; the defendant must take the atand before he is entitled to a ruling on the admissibility of impeachment evidence.
 
 
 13
 Nelson's second point on appeal concerns the photographic spread his counsel sought to present to the jury. Although the trial judge held the evidence admissible, it seems clear from the record that the photographs never were actually shown the jury. Nelson claims this prejudiced his case, because the jury's inspection of the spread was important to its evaluation of the two witnesses' ability to identify him as one of the men who robbed the bank. While we cannot deny that the photographic spread might have been germane to the jury's determination of that issue, we cannot say that the fact that the jury never actually saw the photographic spread was sufficiently prejudicial to require reversal. The record discloses that Nelson's counsel, after the trial judge had initially ruled the photographs admissible, never renewed his request to show the photographs to the jury, and never made any effort to see that the jury actually saw the photographs.
 
 
 14
 Both convictions are affirmed.