**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Barry Jerome ALLEN and John Murray,
Defendants-Appellants.**

**No. 73–3396.**

United States Court of Appeals,
Fifth Circuit.

July 19, 1974.

Alton S. Beasley, F. Shields McManus, Stuart, Fla. (Court-appointed), for Allen.

John T. Brennan, Fort Pierce, Fla. (Court-appointed), for Murray.

Robert W. Rust, U. S. Atty., Harold F. Keefe, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Fortified with 8 or 10 beers, John Gorman, a Camden, New Jersey truck driver, was cruising south on Camden's Broadway Street in his brown 1971 Plymouth Fury at 2:30 A.M. on a Saturday morning in June 1972 when three unescorted black females indicated that they needed a ride. Gorman obliged and let them out in front of a house at 247 Mechanic Street. After two of his passengers left the scene, Gorman accepted the invitation of the third, who claimed nobody was home, to come inside. As he followed her through an unlighted hallway, he was struck over the head with a frying pan. When his senses returned, he perceived he was in a dining room that was dimly illuminated by light from an adjacent room. The stunned Gorman realized his three former passengers were present together with a black male of medium height wearing a red, green and black beanie hat and glasses. Gorman also caught a glimpse of a second black male with an Afro hair style, whom the others referred to as "Tony," but stated he did not then get a good look at this man's face. The two men searched and robbed their victim of his personal effects before binding his arms and gagging him. The five confederates then marched Gorman outside and placed him in the back seat of his Plymouth, before all six departed with Tony at the wheel. The beanied black was seated next to Gorman, who accepted a cigarette from his captor during the

ensuing journey. The car stopped at a secluded stretch of the Turkey Hill Road. Tony opened the door and allowed his captive to step outside. Gorman hit the pavement running, but was caught, knocked down and stabbed before his abductors drove off in the Fury when another automobile approached the scene. Approximately 30 minutes had transpired since Gorman was first struck.

On July 9 Gorman's automobile was recovered in front of the house in which defendants John Murray and Barry Jerome Allen were arrested in Fort Pierce, Florida. The defendants were tried jointly before a jury and found guilty of interstate transportation of a stolen motor vehicle in violation of the Dyer Act, 18 U.S.C. §§ 2, 2312. They appeal from their convictions and four-year sentences, contending that the district court erred (1) in admitting Gorman's testimony identifying them as his assailants; (2) in admitting Edward Mayner's testimony that he observed both defendants getting out of a 1971 gold Plymouth at his house in Fort Pierce; (3) in admitting photostatic copies of the New Jersey registration and title to Gorman's Plymouth Fury; (4) in instructing the jury about the inferences permitted to be drawn from unexplained possession of recently stolen property; and (5) in denying defendants' motions for judgments of acquittal. Finding no error in the proceedings below, we affirm.

When Gorman reported his car stolen New Jersey law enforcement officers showed him photographic displays on two separate occasions in an attempt to identify his assailants. At the first display, Gorman viewed several hundred photographs without recognizing his captors. The second spread, consisting of approximately 50 photographs in groups of between 6 to 10 each, was held after the defendants' arrest. Prior to this display, police officers told Gorman that two black males who had been apprehended with his automobile in Florida, had asserted they won the vehicle in a Philadelphia crap game. Gorman then positively identified defendants Murray, who had worn the beanie, and Allen, whom he recognized as Tony, in a group of 6 photographs, each of which bore an identification number and the inscription of the Philadelphia Police Department. In addition to the youthful defendants, the other photographs in this group depicted two older, bearded black men and two white males. After the defendants' criminal identity had been thus established, the New Jersey officers tape recorded a statement from Gorman in which he repeated his previous identification.

At the close of a pre-trial hearing to suppress Gorman's identification evidence, the district judge ruled that the Philadelphia Police Department photographs were not impermissibly suggestive, that the display procedure as a whole met the test of fundamental fairness, and that Gorman's in-court identification of the defendants rested independently on his recollections from the 30-minute encounter with his abductors. Murray and Allen contend to the contrary that Gorman's courtroom identification was invalid because of the suggestive post-arrest, pre-trial photo display and that the judge's determination that the identification had a source independent of such display was unfounded. To bolster their argument, the defendants urge that Gorman's opportunities to observe his attackers were compromised by the poor lighting conditions and his diminished capacity—resulting from the influence of alcohol and the blow to his skull. In this same vein they point to his post-assault statement to the police that he did not get a good look at "Tony's" face, whom he was unable to describe beyond the Afro, the disparity between his description of the beanied and spectacled Murray and the photograph he selected which showed Murray hatless and without glasses, the lack of resemblance between the defendants and the other men pictured in this particular segment of the photo display, the suggestive pre-identification statements by the police to Gorman connecting the defendants to Philadelphia in conjunction with the group of photo-

graphs clearly marked "Philadelphia Police Department," the absence of counsel during the second post-arrest display or a verifying lineup and the fact that the photographic identification was made over a month after the incident had occurred.

■ The identification procedure employed here is at, if not over, the line of suggestiveness. *See* Simmons v. United States, 390 U.S. 377, 383–384, 386 n. 6, 88 S.Ct. 967, 971, 972 n. 6, 19 L.Ed.2d 1247 (1968). Pre-display statements by the police to the identifying witness that they have persons under suspicion hazard the integrity of the process. *See* United States v. Henderson, 489 F.2d 802 (5th Cir. 1973). *Simmons* teaches that, judging each case on its own particular facts, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971; United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970), cert. denied, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972), explicated the following two-step analysis under the *Simmons* standard:

> "[T]he district courts are to determine separately (1) whether the procedures followed 'were impermissibly suggestive', and then (2) whether, being so, they created 'a substantial risk of misidentification'."

United States v. Henderson, *supra*, 489 F.2d at 805; *see also* United States v. Evans, 484 F.2d 1178 (2d Cir. 1973).

■■ Assuming, *arguendo*, that the display procedures utilized by the Camden police officers were impermissibly suggestive, the district court still had the task of deciding whether such procedures created a substantial risk of misidentification. In personal courtroom confrontations, Gorman twice positively reaffirmed his belief that the defendants were the persons who assaulted him and stole his automobile. He testified unequivocally that his identification was based on his recollection of the incident divorced entirely from his selection of the defendants' mug shots. That Gorman was not disposed to identify just anyone whose photo was dispayed is confirmed by the fact that out of the hundreds of photographs shown to him he selected only those of the defendants. At the time he was struck on the head, almost two hours had elapsed since Gorman had downed his last beer. The length of the kidnapping episode, an experience well calculated to hasten his return to sobriety, also allowed more than sufficient time for his head to clear from the frying pan blow.

Murray was seated beside Gorman during the drive and lit a cigarette for him. Gorman's identification based on this contact alone, was positive. Similarly, Gorman testified that he was able to take stock of Allen at close quarters when his assailants searched, robbed, bound and then led him outside to the automobile. It was Allen who ousted him from the car as his odyssey ended. Both men then came close enough to stab him. Thus, the district court was confronted with classic credibility choices. We are unable to conclude its finding that Gorman's identification testimony was grounded on his independent recollection of his assailants is clearly erroneous. *See* Martin v. United States, 462 F.2d 60 (5th Cir. 1972). Furthermore, neither the absence of defendants' counsel at the second post-arrest display, United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); *see also* Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), nor the omission of a verifying lineup, without more, operate to invalidate the photographic identification. Because Gorman's independent identification removed any substantial risk of irreparable misidentification which the picture spread procedures might have engendered, the district judge properly denied defendants' motions to suppress Gorman's identification testimony. Evans v. Janing, 489 F.2d 470 (8th Cir. 1973); United States v. Stone, 472 F.2d 909 (5th Cir. 1973); United

States v. Cooper, 472 F.2d 64 (5th Cir. 1973). The evidence, therefore, was properly admitted. United States v. Henderson, *supra.*

■■ Defendants' remaining specifications of error are subject to more facile disposition. The district judge did not abuse his discretion in admitting Edward Mayner's testimony that he saw Murray and Allen get out of a gold 1971 Plymouth which had stopped on the street in front of his Fort Pierce home. The defendants' objection was that the evidence was irrelevant and immaterial since Mayner could not remember the month in which the event took place. This relevancy deficit was cured by the testimony of Mayner's father, Oliver Walker, a Fort Pierce policeman, who testified that his son reported the incident to him in July of 1972. With the time supplied, Mayner's observation was certainly admissible to prove defendants' custody of the stolen vehicle in Florida. Likewise, the district judge properly admitted photostatic copies of New Jersey registration of ownership and title to Gorman's Plymouth under the Business Records Act, 28 U.S.C. § 1732. Mayzak v. United States, 402 F.2d 152 (5th Cir. 1968); Thompson v. United States, 334 F.2d 207 (5th Cir. 1964.) This evidence was cumulative to Gorman's recitation about his ownership and the license number of the stolen Plymouth, which was undisputed. The vehicle recovered in Florida bore the identical New Jersey license tag.

■ The only objection to the court's instructions relative to the inferences that could be drawn from defendants' possession of Gorman's automobile was based upon the asserted insufficiency of evidence to establish that culpable possession had been shown. In the precise terms approved in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) the jury was charged that it was permitted to infer from the fact of unexplained or falsely explained possession, sole or joint, actual or constructive, in one state of an automobile recently stolen in another, that the defendants knew the vehicle was stolen and that they transported it in interstate commerce. *See, e. g.,* United States v. Abigando, 439 F.2d 827, 834 n. 6 (5th Cir. 1971); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir. 1969). The instructions amply cautioned the jurors not to draw unfavorable inferences or presume guilt from the defendants' failure to testify, and they related that possession could be satisfactorily explained by other facts and circumstances in evidence. Taken as a whole the instructions did not imperil the presumption of defendants' innocence. Most assuredly, they were free of plain error.

■ This circuit's position on the essential elements of this crime is clear.

"In a Dyer Act case, the government must prove that the car was stolen and that the accused, knowing it to have been stolen, transported it in interstate commerce . . . ."

United States v. Robertson, 417 F.2d 873, 875 (5th Cir. 1969).

"The possession of a stolen vehicle which if unexplained gives rise to the important inferences of transportation and guilty knowledge, means to have 'management, care, dominion, authority and control, singly or jointly' over the vehicle."

Fitzpatrick v. United States, *supra,* 410 F.2d at 516. In addition to Mayner's testimony and the circumstances of the arrest, the government's evidence of defendants' possession of the Plymouth in Florida included the testimony of Officer Walker and Nathaniel Gibbs, also a Fort Pierce policeman, who, on several occasions, separately observed the defendants alone in the car with Allen driving. The officers also saw them in the vehicle accompanied by or as passengers with others. Although this evidence of "guilty possession" in Florida, standing alone, arguably would not be sufficient to support the inferences of guilty knowledge and interstate transportation in every case, *see, e. g.,* United States v. Robertson, *supra;* Fitzpatrick v. United States, *supra,* the proof in to-

day's record also contained Gorman's testimony identifying Murray and Allen as the thieves who stole and possessed his automobile in New Jersey. *In toto,* the prosecution's case established ample "management, care, dominion, authority and control" to justify the "unexplained possession" charge to the jury. Given proof of direct participation by defendants in the New Jersey theft, and the numerous instances of contact with and possession of the automobile in Florida, there was ample foundation for inferring that defendants were also involved with the interstate transportation of the vehicle.

The evidence, considered most favorably to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and the inferences which a reasonable juror could draw therefrom, were not only consistent with defendants' guilt, but also were inconsistent with every reasonable hypothesis of innocence. Consequently, the district court properly rejected defendants' motions for judgments of acquittal.

Affirmed.