**UNITED STATES of America**

v.

**Rolando OTERO–HERNANDEZ.**

**No. 76–118–Cr–J–NCR.**

United States District Court,
M. D. Florida.

Aug. 13, 1976.

John L. Briggs, U. S. Atty., Jacksonville, Fla.; Michael P. Sullivan and R. Jerome Sanford, Sp. Asst. U. S. Attys., Miami, Fla., for plaintiff.

Thomas Almon, Miami, Fla., for defendant.

## MEMORANDUM OPINION

ROETTGER, District Judge.

This matter arises as a result of defendant's motion to suppress an in-court identification of defendant Rolando Otero-Hernandez based upon an out-of-court identification. Unlike the usual manner by which these out-of-court identifications are made: showups, see *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); lineups, see *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Wade v. United States,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and photo spreads, see *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), this identification was not made by means of visual characteristics. The instant identification was made by means of a voice spread—various voices each repeating the same words on a tape recording.

On October 17, 1975, at 5:58 in the morning, Mrs. Catherine Simpson, a reservation clerk for Eastern Airlines in Charlotte, North Carolina, received a telephone call from Miami, Florida, warning of a bomb in the Miami International Airport. When Eastern's Miami reservations lines are busy or closed, all calls are automatically transferred to Charlotte. The voice said:

> "Listen to me. This is not a joke. We have planted some bombs in the complex. The first one will go off in a couple of minutes."

The voice was identified by Mrs. Simpson as that of a Latin male, over 20 years of age.

A few minutes later an explosive device detonated in a bank of lockers at Miami International Airport causing damage at that location. Defendant Rolando Otero-Hernandez was subsequently indicted by a Miami Grand Jury for this bombing, as well as for a number of others which occurred in the Miami area on the 3rd and 4th of De-

cember, 1975. That indictment was later superseded by a 17 count indictment.[1]

On the day trial was scheduled to begin, Mrs. Simpson flew to Jacksonville; at the United States Attorney's office she was met by Special Agent Haddock of the Federal Bureau of Investigation and escorted to a room adjoining the F.B.I. office. Mrs. Simpson was asked by Agent Haddock, the case agent, to listen to a tape recording. On the recording was a voice exemplar made by defendant Otero-Hernandez. Also on the tape were voice exemplars made by four law enforcement personnel with Latin backgrounds and accents.[2] In preparing the exemplars defendant and the others read from four cards prepared by the F.B.I. On one card were the words used by the unidentified caller on October 17, 1975.[3]

Present in the room with Mrs. Simpson were Special Agents Haddock, Usher (who operated the tape recorder) and Kiszynski. Mrs. Simpson was not told that defendant's voice was on the tape; however, she surmised that it was. The agents made no comment while Mrs. Simpson listened to the tape. Her comments were recorded on a sheet of paper by Agent Haddock. Counsel for defendant was neither present nor invited. Counsel was present, however, when defendant's exemplar was prepared.

Defendant raises two grounds for suppression. First, defendant asserts that this identification procedure is akin to a lineup and, therefore, counsel should have been present. *Kirby v. Illinois,* supra; *Gilbert v. California,* supra; *Wade v. United States,* supra. Second, that the identification was impermissibly suggestive, leading to a substantial likelihood of irreparable misidenti-

fication. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Sutherland,* 428 F.2d 1152 (5th Cir. 1970). For the reasons expressed below the court has concluded that suppression is not warranted.

Since *Gilbert v. California,* supra, and *Wade v. United States,* supra, a lineup has been deemed a "critical stage" of criminal proceedings at which the constitutional right to have counsel present applies. See *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Because the identification in the instant case occurred on the day of trial, the limitations to that doctrine expressed by the Supreme Court in *Kirby v. Illinois,* supra, do not apply.

The Government contends that the identification procedure employed in this case is not similar to a lineup but is more akin to a photo spread. In a photo spread the accused is not physically present when the identification is made. The constitutional protections arising from the Sixth Amendment right to counsel which are afforded at lineups have not been extended to photo spreads. *United States v. Ash,* supra; *United States v. Ballard,* 423 F.2d 127 (5th Cir. 1970).

The one major distinction between the photo spread and the other methods of visual identification is the aspect of confrontation. In both the showup and the lineup the accused is confronted by his accuser. See *United States v. Ballard,* supra; see also *United States v. Bennett,* 409 F.2d 888 (2d Cir. 1969) and *McGee v. United States,* 402 F.2d 434 (10th Cir. 1968). Without the presence of counsel, there is always the

1. Defendant eventually was indicted for one count of conspiracy to violate certain sections of the United States Code, 18 U.S.C. § 371; 7 counts of attempting to cause damage to various buildings by means of explosives, 18 U.S.C. § 844(f), (i); and 9 violations of the National Firearms Registration Act, 26 U.S.C. § 5861(d). The conspiracy count was dismissed with prejudice on the Government's motion prior to trial. Because of extensive news media coverage this case was transferred to Jacksonville from the Southern District of Florida on defendant's motion, pursuant to Rule 21, F.R.Cr.P.

2. Detective Julio Ojeda of the Dade County Public Safety Department was voice number 2, and Special Agents George R. Kiszynski, Cy Gutierrez, and Al Cueto of the F.B.I. were voices numbered 3, 4 and 5.

3. The other cards had words, both in English and in Spanish, which were used in calls relating to other bombings in the Miami area. These calls were not received by Mrs. Simpson. However, she did listen to everything on the tape except the identification of the voices.

potential that the accused might do or say something which would cause irreparable prejudice to his case. See *United States v. Bennett,* supra. Such matters would not be correctible through cross-examination or other adversary proceedings at trial.

With a photo spread the absence of the accused prevents him from causing irreparable harm to himself. *United States v. Ballard,* supra. Although counsel is not present at the time of identification, the photographs used for the out-of-court identification are permanent and are preserved for counsel's examination in discovery and at trial. This examination suffices to determine whether the identification was the product of unfair tactics or suggestions on the part of the Government. See *United States v. Ash,* supra; 413 U.S. at 324, 93 S.Ct. 2568 (Stewart, J., concurring.)

The issue of the right to the presence of counsel in the context of a voice spread, rather than a photo spread, has been rarely considered. In *United States v. Smith,* 467 F.2d 1126 (7th Cir. 1972), the court concluded that independent aural observations were used as the basis for the in-court identification. There was evidence to support a finding that the voice spread was prior to indictment and, thus, the presence of counsel is not constitutionally required. *Id.* at 1131. The *Smith* court did state:

"We do not find the 'lineup' or 'show-up' cases to be sufficiently analogous to require the presence of counsel in this context." Ibid.

The court observes that a tape recording, like a photograph, has a degree of permanence which would permit counsel to effectively reconstruct the out-of-court session during a trial confrontation. See *United States v. Ash,* 413 U.S. supra at 324, 93 S.Ct. 2568 (Stewart, J., concurring). Any indication that the out-of-court procedure was suggestive of defendant or was otherwise conducted in an improper manner can be tested and resolved by adversary proceedings at trial. See *Simmons v. United States,* supra; *United States v. Henderson,* 489 F.2d 802 (5th Cir. 1973); *United States v. Ballard,* supra.

There are, of course, means by which a tape recording may be tampered which are qualitatively and quantitatively different from what might be required to tamper with a photograph. Nevertheless, adequate adversary procedures exist to ferret out such misconduct at trial. See *Addison v. United States,* 317 F.2d 808 (5th Cir. 1963); cf. 18 U.S.C. § 2518(8)(a).

Accordingly, this court concludes that a voice spread is functionally equivalent to a photo spread rather than a lineup. Therefore, there is no constitutionally mandated requirement that defendant's counsel be present or invited at the time such an out-of-court identification is made.

■ Turning to the second assertion made by defendant, this circuit adheres to the formula first set out in *Simmons v. United States,* supra, for admissibility of an in-court identification, based upon an out-of-court photo spread, *United States v. Henderson,* supra; *United States v. Sutherland,* 428 F.2d 1152 (5th Cir. 1970). *Henderson* requires a two-step test:

"(1) whether the procedures followed were 'impermissibly suggestive', and then (2) whether, being so, they created 'a substantial risk of misidentification'." 489 F.2d at 805.

As required by *Sutherland,* this court held a hearing outside the presence of the jury.

■ At the hearing, the exemplar recording was played several times. The defendant's only assertion of impermissible suggestiveness which requires comment is that undue emphasis was made by the law enforcement officers on the word "joke" in the exemplars. The court finds that all of the agents pronounced the word "joke" with a "j" similar to a soft "g", as in "George." In the exemplar made by defendant Otero-Hernandez, the word "joke" is pronounced with a different "j"—almost like "choke."

The significance of this word arises from an interview with Mrs. Simpson conducted by a special agent of the F.B.I.'s Charlotte office. In that interview, Mrs. Simpson noted that the pronunciation of the word

"joke" in the call she received on the morning of October 17, 1975, was distinctive. She remembered the word as being pronounced as "yoke." Curiously, she testified that she remembered reading that in Spanish the letter "j" is pronounced as a "y." This error on her part about pronunciation, although interesting, apparently did not affect her ability to identify defendant's voice because she testified that the pronunciation of the word "joke" was not a factor in her identification of defendant's voice on the tape recording. She testified that her identification was based upon hearing the accent, tone, rhythm and word formation of defendant's voice.[4]

It is clear that a "dissimilarity should not automatically be equated with suggestiveness." *United States v. Kopacsi,* 488 F.2d 900, 903 (5th Cir. 1973).

> "A dissimilarity is suggestive only to the extent that it singles out and focuses the attention of the witness on a suspect before the witness has been able to make an independent determination."

*Id.* If the agents whose voices were used on the tape deliberately mispronounced the word "joke" to bait the hook, Mrs. Simpson failed to take the bait. Her testimony and that of Special Agent Haddock, as well as his notes, support the view that Mrs. Simp-

son's identification was made on the basis of factors other than the pronunciation of the word "joke." Even if this court were to determine that the agents' actions in preparing the tape requires the finding that the voice spread is impermissibly suggestive, which the court concludes is not the case, the court cannot conclude that there is a substantial likelihood of irreparable misidentification.[5] See *United States v. Sutherland,* supra.

The court finds that the agents' conduct in conducting the out-of-court tape identification session was quite proper. Care was taken to avoid a conversation with Mrs. Simpson which might result in coloring her reaction. Accordingly, the court finds that Mrs. Simpson's identification is admissible under *Simmons v. United States,* supra, and *United States v. Sutherland,* supra, and may be made before the jury.[6]

---

**4.** Mrs. Simpson's testimony is further strengthened by her testimony concerning a previous voice identification. She testified that she had once received a phone call from a man who complained about flying saucers on his roof. Several months later, Mrs. Simpson received a call from a person who made air travel reservations. She recognized this man as the one who had made the previous call and she inquired about the flying saucers on his roof. She did not think about the repercussions of such an inquiry, had she asked the wrong person, until afterwards.

**5.** This conclusion is bolstered by a line of cases, such as *United States v. Bell,* 457 F.2d 1231 (5th Cir. 1972). In *Bell,* a photo spread was employed in the investigative process. All of the photos in the spread were "bust shots", except the one of defendant Bell. His was a full-length shot. The witness had observed the actual robber standing beside his car. The witness was unable to select defendant from a lineup held ten days after the photo identification. Eventually, the Fifth Circuit considered

the photo spread to be permissible under *Sutherland. United States v. Bell,* supra at 1235. Thus, any emphasis on the word "joke" as it appears on the tape exemplars made by the agents does not require the out-of-court identification be considered impermissibly suggestive. As in *Kopacsi,* supra, "the distinctive quality of [defendant's] voice only served to reinforce the initial identification." *United States v. Kopacsi,* supra at 903–04.

**6.** The court has also considered the factors enumerated in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and adopted in *United States v. Kopacsi,* supra, in determining the reliability of the identification. Only the length of time which had elapsed between the original call and Mrs. Simpson's identification—10 months—would be of concern. However, Mrs. Simpson's attention to detail, prior history of reliability, candor and level of certainty convinced the court that there could be no substantial likelihood of misidentification. *Neil v. Biggers ,*supra.