UNITED STATES of America, Plaintiff-Appellee,

v.

Lloyd Miley MANN, Defendant-Appellant.

No. 76–4111.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1977.

---

Joseph W. Blackburn, Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, Bill L. Barnett, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before WISDOM, SIMPSON and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

The defendant appeals his jury conviction of one count of violating 18 U.S.C. § 2312 [1] and two counts of violating 18 U.S.C. § 2313 [2] arising from his involvement with two stolen motor vehicles. Because we find the conviction on the transportation count and one of the disposal counts infected by an impermissibly suggestive out-of-court identification, and further find the evidence insufficient to support the remaining disposal count, we reverse Mann's conviction and remand the case to the district court for a new trial.

In a four count indictment, Mann and a codefendant, Fred Studdard, were charged in counts one and three with aiding and abetting each other in knowingly transporting in interstate commerce two stolen motor vehicles in violation of 18 U.S.C. § 2312, and in counts two and four with receiving, concealing, storing, bartering, selling, and disposing of the same two vehicles in violation of 18 U.S.C. § 2313. Before trial, Mann's codefendant pleaded guilty to all counts. A jury found Mann guilty of counts one, two, and four. Count four involves both a different transaction and a different claim of error from counts one and two; we treat it separately.

## I.

Counts one and two relate to the theft and sale of a 1972 Ford Ranger pickup truck. That truck was stolen from the parking lot of a textile plant in Trion, Georgia on March 23 or 24, 1976. On March 25, 1976, Studdard, the codefendant, sold the truck to J. R. Jones outside the Anniston, Alabama, automobile auction for $1500, a sum considerably less than the wholesale value of the truck. Mann and Barbara Studdard, a friend of Mann unrelated to Fred Studdard, accompanied Studdard to the Anniston auction. The bill of sale on the truck, which Fred Studdard gave to Jones, reflected that the truck had been transferred from Alton Smith to Fred Studdard. It was notarized by Mary Elizabeth Morgan, a notary public who took Alton Smith's acknowledgement when he transferred the truck to Fred Studdard. At trial, Ms. Morgan identified Mann as the Alton Smith whose signature she notarized on the bill of sale. The propriety of her photo-identification of Mann before trial and its effect on her identification of Mann at trial are in issue. Ms. Morgan's identification of Mann as Alton Smith corroborated Fred Studdard's testimony that Mann accompanied him to Ms. Morgan's office where she notarized the falsified bill of sale while Mann posed as Alton Smith.

Morgan's identification of Mann as the Alton Smith who transferred the stolen 1972 Ford Ranger to Fred Studdard was critical to the prosecution's case on counts one and two. Other than her testimony, the only evidence directly linking Mann with the stolen vehicle was Fred Studdard's testimony; and that testimony was doubly suspect. Studdard was not only Mann's codefendant who pleaded guilty and agreed to aid the government in its case against Mann, but there was also undisputed psychiatric testimony that Studdard was a paranoid type schizophrenic who was out of touch with reality and tended to confuse facts. In addition to positively tying Mann to the disposal of the stolen truck, Morgan's identification of Mann tended to lend credence to Studdard's inherently suspicious testimony.

Mann contends that the photographic identification procedures used by the investigating FBI agent, Larry Sylvester, in procuring Morgan's identification of Mann were so improperly suggestive that her identification of Mann at trial was ir-

---

1. 18 U.S.C. § 2312 provides:

 Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

2. 18 U.S.C. § 2313 provides:

 Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

remediably tainted. Under *Simmons v. United States,* 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, a witness's in-court identification of a defendant following a pretrial identification by photograph violates the defendant's right to due process "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. This Circuit has developed a two-step process for determining whether the *Simmons* standard is met in a particular case: "the . . . courts are to determine separately (1) whether the procedures followed were 'impermissibly suggestive', and then (2) whether, being so, they created 'a substantial risk of misidentification'". *United States v. Henderson,* 5 Cir. 1973, 489 F.2d 802, 805, *cert. denied,* 1974, 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217; *United States v. Sutherland,* 5 Cir. 1970, 428 F.2d 1152, 1155. This approach is consistent with the Supreme Court's recent decision in *Manson v. Brathwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140. In *Manson,* the Supreme Court eschewed the adoption of a *per se* rule of exclusion for out-of-court identification evidence infected by impermissibly suggestive police procedures. Instead, the Court reaffirmed its decision in *Neil v. Biggers,* 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, and held that, just as it is for in-court identifications, "reliability is the linchpin for determining the admissibility of [pre-trial] identification testimony" as well. The reliability of a witness's identification of a defendant, the use of impermissibly suggestive procedures by law enforcement officers notwithstanding, is precisely the focus of the second inquiry under the *Henderson-Sutherland* test.[3]

 Here, we conclude, first, that *the pretrial identification procedures were impermissibly suggestive.* In *Sutherland* and

*Henderson,* we instructed the district courts "to conduct in camera hearings to inquire into the circumstances of challenged identification procedures". 489 F.2d at 805; 428 F.2d at 1155. In this case, however, neither the prosecution nor the defense knew about the pretrial photographic identification procedures employed by FBI Agent Sylvester until Morgan mentioned them during her cross-examination. Consequently, there is no question whether there should have been a separate hearing on this issue. Instead, it is necessary to focus on Morgan's testimony about the nature of the procedures used by Sylvester. She described those procedures as follows:

> Q: [by defense attorney Blackburn]: All right. Mrs. Morgan, you said that you did not think that Alton Smith, it did not come to your mind that Alton Smith and Lloyd Mann were one and the same until after they had left your office?
>
> A: That's right.
>
> Q: Okay. And if I recall your prior testimony, you said that that was so because you did not look carefully at the man who was in your office, but, as you thought about it you seemed to think that you had seen him before, is that right?
>
> A: Right.
>
> Q: And that is the basis of your testimony here today?
>
> A: *Later I did know that I had seen him before, yes, but, not until I saw pictures of him at two, under two different names.*
>
> Q: Pictures of him? You were shown pictures of him to identify?
>
> A: Right.
>
> Q: Who showed you pictures to identify?
>
> A: The FBI.
>
> Q: What pictures were they, and under what names were they? You said you saw him, his picture under two different names?

---

**3.** In the wake of *Manson,* it is apparent that the *Henderson-Sutherland* test applies to both out-of-court and in-court identifications. *Manson,* of course, adds no new guidelines for the disposition of cases, such as this one, involving in-court identifications, since it has been clear

since *Simmons* that reliable in-court identifications are admissible despite the fact that they followed suggestive pretrial identifications. *See Manson v. Brathwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140–156 (Marshall, J., dissenting).

A: Well, one of them was Lloyd Mann, and the other one was Alton Smith.

Q: You mean, they showed you this man's picture?

A: This was after all of this came up, yes.

Q: And they had Lloyd Mann attached to one and Alton Smith attached to another?

A: No. They were not attached, they were just—

Q: They were what?

A: Photographs, little pictures.

Q: Did they have the names on them?

A: No. *But, when he asked me if I knew an Alton Smith and a Lloyd Mann, and showed me the pictures, I knew then that they were one and the same.*

Q: Why did they show you two pictures of the same man?

A: Well, I don't know. Ask him.

Q: Well, okay. But, they were, the names were not on those pictures?

A: No.

Q: It was suggested by Mr.—was it Mr. Sylvester that you are identifying?

A: Yes.

Q: It was suggested by him that one of the pictures was of Alton Smith and the other was Lloyd Mann, and you looked at the pictures, and they looked alike?

A: Yes.

Record, Vol. II, at 146–148 (emphasis added).

The conclusion that the procedures employed were impermissibly suggestive is inescapable. Morgan was shown two pictures. They were both of the same man. FBI Agent Sylvester suggested that one of the pictures was of Alton Smith and the other was of Lloyd Mann. Not surprisingly, as a result of viewing the pictures Morgan concluded that Alton Smith and Lloyd Mann "were one and the same".

■ We conclude also that *the impermissibly suggestive photographic identification procedures created a substantial risk of misidentification.* In *Manson v. Brathwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140, the Supreme Court reiterated the factors, initially set out in *Neil v. Biggers,* 1972, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 410–411, to be considered in evaluating the reliability of an identification.

> These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

97 S.Ct. at 2253. Taking each of these factors into account, first, it is clear that Morgan, according to her own statement, had little opportunity to view the individual known as Alton Smith. Second, she testified that she was "real busy" while he was in her office, so her degree of attention to the individual must consequently have been slight. Third, the witness was not asked to give a description of Alton Smith, so there is no way of checking its accuracy. Fourth, although Morgan was certain of her identification of Mann as Alton Smith at trial, there is no information on her level of certainty at the time she identified the photograph in her office. Finally, Morgan apparently identified the photographs about a month after the incident in her office. An evaluation of these five factors hardly yields the picture of a witness with the "ability to make an accurate identification". *Manson v. Brathwaite,* 97 S.Ct. at 2253. Weighed against the corrupting effect of the challenged identification, these indicia of reliability come out on the short end of the scale. There was a substantial risk of misidentification as a result of the photographic identification procedures used by FBI Agent Sylvester.[4]

4. The government argues that because Morgan had seen the defendant two or three times before the day on which she notarized the bill of sale for Alton Smith in her office, and thus had an independent basis for her in-court identification of Mann, there is no need to consider

■ Although no objection was made to the admission of Morgan's identification testimony at trial, we find that an error of such constitutional proportions is plain error within the meaning of Fed.R.Crim.P. 52(b).[5] We therefore reverse Mann's conviction on counts one and two, and pretermit any discussion of his other challenges to these counts.

## II.

Mann's conviction on count four of the indictment stems from his connection with a 1974 Ford pickup truck that was stolen from a used car lot in Carrollton, Georgia, on January 17, 1976. On January 18 the vehicle was brought to the auto body shop owned by the defendant by an unidentified individual, who asked Mann to perform body repairs on the vehicle. Mann did so. On January 19, 1976, the individual negotiated a trade of the truck to Mann in exchange for Mann's car—valued at $600— plus an undetermined amount of cash. Mann sold the truck on January 22, 1976, at the Hughes Auto Auction in Fort Payne, Alabama for $1350.

■ Mann challenges the sufficiency of the evidence to support his conviction on count four, contending that reasonable jurors could not find beyond a reasonable

doubt that he knew the 1974 Ford truck was a stolen vehicle.[6] A defendant's knowledge that a vehicle he sold was stolen is, of course, a necessary element of the crime defined by 18 U.S.C. § 2313. *United States v. Fairchild,* 5 Cir. 1975, 505 F.2d 1378, 1381; *United States v. Stanley,* 5 Cir. 1970, 433 F.2d 637, 638.

The question whether there is adequate evidence to show that Mann knew the 1974 truck was stolen is a close one. The prosecution established that the truck was stolen, and that the exposed (public) vehicle identification number (VIN) on the truck was altered and differed from the truck's true (concealed) VIN at the time Mann sold the vehicle. The sole evidence tying Mann to the sale of the truck was the testimony of his employee, E. Howard Johnson. Johnson testified that Mann purchased the truck from a man who had brought the truck into Mann's shop for body work, subsequently had Johnson purchase an Alabama license registration for the truck in Mann's name, and finally sold the truck at the Hughes Auto Auction in Fort Payne, Alabama.

■ It is well established that "an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods", *United States v. Fairchild,*

the constitutionality of the pretrial identification procedures. However, it is far from clear that Ms. Morgan had an independent basis for identifying the defendant. She testified that she did not recognize the individual called Alton Smith when he came into her office, and also admitted that she was not in a position to see the individual well because she was "real busy when he was in there". Record, Vol. II, at 139.

5. In *Manson v. Brathwaite,* the Supreme Court, as well as the lower appellate courts, reviewed the defendant's challenge to the identification evidence used against him despite the fact that no objection was made to the admission of the evidence at trial. 97 S.Ct. 2243.

6. Mann preserved his challenge to the sufficiency of the evidence on count four in his motion for a new trial. *See* Fed.R.Crim.P. 29(c). Although the 1966 Advisory Committee notes to that rule state that "[r]eferences in the original rule to the motion for a new trial as an alternate to the motion for judgment of acquittal and to the power of the court to order a new

trial have been eliminated", they go on to explain that this was done primarily because the wording in the original rule was "subject to the interpretation that a motion for judgment of acquittal gives the court power to order a new trial even though the defendant does not wish a new trial and has not asked for one". This Circuit, in accord with the change in Rule 29(c), has consistently held that a dismissal of the indictment—not a retrial—must be ordered where a defendant's motion for acquittal, unaccompanied by a motion for new trial, is granted. *United States v. Perez,* 5 Cir. 1976, 526 F.2d 859, 863, *cert. denied,* 1976, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118; *United States v. Apollo,* 5 Cir. 1973, 476 F.2d 156, 158; *United States v. Musquiz,* 5 Cir. 1971, 445 F.2d 963, 966; *United States v. Goodson,* 5 Cir. 1971, 439 F.2d 1056. However, nothing in Rule 29(c) or in our decisions prohibits a motion for acquittal, capable of preserving the sufficiency question for appeal, from being embodied in a motion for a new trial. Where such a motion is granted, of course, a new trial may be ordered.

505 F.2d at 1381; *United States v. Stanley,* 433 F.2d at 639, and the trial judge so charged. Here, however, Mann's possession of the 1974 Ford pickup was adequately explained by Johnson, the prosecution's own witness.

Q [by defense attorney Blackburn]: . . .. You had previously testified . . . . that the individual who brought the truck in initially wanted it repaired at you all's shop, is that right?

A: Yes, sir.

Q: Your personal knowledge, that is correct?

A: Yes, sir.

Q: And he was not there to deliver a truck, or whatever has been insinuated here?

A: Yes, sir.

Q: He was there to have it repaired?

A: Yes, sir.

Record, Vol. II, at 202. Moreover, Johnson disavowed the existence of any suspicious circumstances surrounding Mann's purchase of the stolen truck.

Q [by defense attorney Blackburn]: Okay, All right. At any time, either when you saw Lloyd negotiating for the purchase of this truck, Sunday or Monday, or, later, when you were repairing the truck, or, later, when you accompanied Lloyd out to Hughes Auto Auction to sell the truck, did you have any indication, or, was there any indication from anybody's conduct that there was anything improper about the title to this truck?

A: No, sir.

Mr. Atkins [Assistant U.S. Attorney]: I object.

THE COURT: Overruled.

A: No, sir.

Q: Would you answer?

A: No, sir.

Q: There was nothing improper indicated in the negotiations or the sale?

A: No, sir.

Record, Vol. II, at 192. In these circumstances,[7] the jury could not properly have inferred that Mann knew the 1974 Ford pickup was stolen simply because he had possession of it.[8]

The additional evidence tending to show that Mann knew the vehicle was stolen was scanty. Although it was established that the exposed VIN on the truck had been altered and that Mann used this altered number in purchasing an Alabama license registration for the truck, no evidence was presented showing either that Mann knew the VIN was altered when he bought the truck, or altered the VIN himself after he purchased it. Mann both registered and sold the vehicle under his own name, acts that one knowingly trafficking in stolen vehicles would be loath to do. The most persuasive evidence of Mann's knowledge of the truck's status as stolen is the fact that he sold the truck, worth $3550, for $1350. However, we find it unnecessary to decide whether this fact alone would support a jury finding that Mann knew the truck was stolen. We are convinced that Ms. Morgan's improperly admitted in-court identification of Mann as the man who sold Fred Studdard the stolen truck that was the subject of counts one and two had at least some prejudicial impact on the jury's evaluation of the evidence against Mann with respect to count four. This was almost inevitable given that the crimes

---

**7.** Although we held in *United States v. Fairchild,* 5 Cir. 1975, 505 F.2d 1378 "that a *defendant's* explanation of his possession of recently stolen goods does not *necessarily* overcome this permissible inference of guilty knowledge", 505 F.2d at 1381 (emphasis added), we think that an explanation by a *prosecution* witness does.

**8.** The trial judge, in instructing the jury, correctly cautioned:

Furthermore, if though it be proved that the defendant was in possession of some stolen vehicle fairly recently after its theft, if it *further be shown to your satisfaction that* that possession can be explained and is explained in a way that's consistent with innocence and with not having knowledge of the theft, with not having been involved in any transportation across state lines, then you would not obviously draw the inference that otherwise would be allowed to be drawn. Record, Vol. II, at 301.

charged in count two and count four were the same. Absent this spillover effect, we might well have been inclined to affirm Mann's conviction of count four. Given the closeness of the evidentiary question, however, we cannot ignore the substantial probability that Morgan's tainted identification testimony spelled the difference for Mann between conviction and acquittal on count four. Mann's conviction on that count, like his conviction on counts one and two, is therefore reversed and remanded for a new trial.

REVERSED AND REMANDED.