UNITED STATES of America, Plaintiff–Appellee,

v.

Bobby Lee BRIDGES, Defendant–Appellant.

No. 93–3175.

United States Court of Appeals, Tenth Circuit.

March 17, 1994.

Charles D. Anderson, Federal Public Defender, and Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office, Dist. of KS, Topeka, KS, for defendant-appellant.

Randall K. Rathbun, U.S. Atty., and Marshall J. Piccinini, Sp. Asst. U.S. Atty., Fort Riley, KS, for plaintiff-appellee.

Before SEYMOUR, C.J., McKAY and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

The parties have agreed that this case may be submitted for decision on the briefs. *See* Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.

On March 18, 1992, a burglary occurred at the Army Community Services building at Fort Riley, Kansas. The burglar or burglars entered through a broken window and took various items of food as well as some pots and pans. Eleven days later, a second burglary occurred at the same location, with the burglars again entering by breaking the same window. During the second burglary, several computers and other electronic equipment were stolen. This equipment was later found in the home of Bobby Lee Bridges.

Mr. Bridges was indicted for theft of government property and for receipt of stolen property, both in violation of 18 U.S.C. § 641. The indictment arose out of the second burglary only, although a co-defendant implicated Mr. Bridges in the earlier burglary as well. No charges were brought with respect to the first burglary. Mr. Bridges pled guilty to the theft charge as part of a plea agreement in which the charge of receiving stolen property was dismissed. The district court sentenced Mr. Bridges to a term of thirty months imprisonment, followed by three years of supervised release. This sentence was based on an offense level that was increased by four points, two for "more than minimal planning" in accordance with U.S.S.G. § 2B1.1(b)(5), and two for Mr. Bridges' role in the offense, pursuant to U.S.S.G. § 3B1.1(c). Mr. Bridges appeals both of these two-point increases.

The district court's factual findings concerning the Sentencing Guidelines are re-

viewed under the clearly erroneous standard, while questions relating to the interpretation of the Guidelines are questions of law that we review *de novo. United States v. Lambert,* 995 F.2d 1006, 1008 (10th Cir.1993).

■ The two-point increase for "more than minimal planning" under U.S.S.G. § 2B1.1(b)(5) is appropriate when there was "more planning than is typical for commission of the offense in a simple form," as well as where "significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1, comment. (n.1(f)). This threshold is deemed met "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." *Id.* Thus, the Sentencing Guidelines provide three distinct rationales for the two-point enhancement contained in section 2B1.1(b)(5): (1) where there are one or more acts involving more planning than is typical for committing the offense in its simple form; (2) where affirmative steps are taken to conceal one or more acts; and (3) where there is a series of acts over a period of time, regardless of the level of planning involved in each, unless each is purely opportunistic. If any one of the three rationales is satisfied, then the enhancement may justifiably be applied.

In this case, the district court determined that the threshold had been crossed "as there were repeated acts over a period of time and each act was not merely opportunistic." (R. Vol. IV at 12–13.) The "repeated acts" referred to were the two entries into the building at Fort Riley. Thus, in applying the "more than minimal planning" increase, the court relied solely on the fact that Mr. Bridges had "repeated" the act twice, and not on any conclusion that the theft involved more planning than is typical for commission of a simple burglary or that there were affirmative attempts to conceal the offense. Consequently, the sole issue before us is whether an act committed twice falls within the scope of the "repeated acts over a period of time" language of the Sentencing Guidelines. This question involves an interpretation of the Guidelines and is therefore a question of law that we review *de novo.*

■ Before turning to that issue, we note that the government apparently recognizes that the district court did not find that there had been "more planning than is typical for commission of the offense in a simple form" in the two burglaries, and therefore does not argue on appeal that this rationale supports the two-point enhancement in this case. Rather, the government bases its argument solely on the idea that an act repeated twice meets the "repeated acts over a period of time" test of section 2B1.1(b)(5). Where the district court explicitly sets forth the factual basis for its determination to apply a sentencing enhancement, we do not believe it necessary to search the record for some alternate ground that might potentially support the district court's conclusion. This is especially true where neither party urges any other rationale on appeal. *Cf. United States v. Johnson,* 911 F.2d 403, 406 (10th Cir.1990) (upholding enhancement for more than minimal planning despite the district court's failure to make any specific factual findings in support thereof, where those facts were listed in the presentence report and were clear and beyond doubt), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991). Nevertheless, we deem it worth addressing the question whether the facts of this case could support a finding that there had been "more planning than is typical for the commission of the offense in a simple form."

■ The presentence report (PSR) based its recommendation for a two-point enhancement both on the "repeated acts" test and on the planning aspect of section 2B1.1(b)(5). The report reasoned that the second burglary occurred after Mr. Bridges had had the opportunity to observe the contents of the building and to conclude that a second entry would be profitable. (*See* R. Vol. III at 6, ¶ 18; *id.* at 26, ¶ 84.) The presentence report thus suggests that the mere fact that Mr. Bridges had concluded after the first burglary that a second burglary would be profitable *ipso facto* establishes that there had been the requisite degree of planning involved in the second burglary. We find this reasoning unpersuasive.

The Sentencing Guidelines were designed to establish appropriate sentences for specific

crimes. Necessarily, the Sentencing Commission took into consideration the basic nature of each crime in calculating the punishment warranted. This "core" of activity corresponds to the "base offense level" of the designated guideline. For a "core" violation of 18 U.S.C. § 641, the applicable guideline is contained in section 2B1.1. U.S.S.G.App. A (Statutory Index). The Guidelines then provide for an *enhancement* of the base offense level in certain circumstances. We can envisage no reason to break into a building with the intent to steal, absent a determination that it would be profitable to do so. Accordingly, that determination must of necessity be part of the "core" offense. To permit that factor, standing alone, to trigger the enhancement provision under section 2B1.1(b)(5) would effectively incorporate the two-point enhancement into the calculation of the base offense level in every case involving theft. Such a result would inevitably render the very concept of "enhancement" meaningless. We decline to adopt such a view. *See Johnson,* 911 F.2d at 406 (holding that advance knowledge of location of desired goods, in *combination* with advance procurement of bolt cutters, eluding of an alarm system, and replacement of broken lock with another lock so as to conceal the fact of the break-in, constituted more than minimal planning); U.S.S.G. § 1B1.1, comment. (n.1(f), example two).

Moreover, we believe that the examples given in the commentary to the section of the Guidelines defining "more than minimal planning" preclude a conclusion that the rationale of the PSR suffices to establish such planning. *See* U.S.S.G. § 1B1.1, comment. (n.1(f)). In each of the examples, the profit motive is inherent in the conduct. Furthermore, in each of the examples there is more involved than merely taking the items; one example speaks of checking the area to make sure that there are no witnesses present, while another speaks of going to a secluded area to conceal the stolen item in one's pocket. Yet, the examples expressly provide that the described behavior alone does not consti-

tute more than minimal planning. Accordingly, we believe that the possibility that Mr. Bridges determined that it would be profitable to return to the building, standing alone, cannot elevate the crime beyond the "core" contemplated in the Sentencing Guidelines.

▆ Turning now to the issue directly before us, the government argues that "repeated" merely means "committed more than once." While this may be technically correct, we believe that the Guidelines contemplate something more. The Application Note explaining "more than minimal planning" gives as examples the following:

> In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts on *several occasions* would constitute more than minimal planning.
>
> . . . .
>
> In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would *several instances* of taking money . . . .

U.S.S.G. § 1B1.1, comment. (n.1(f)) (emphasis added). We believe that the examples given demonstrate that the Guidelines equate "repeated" with "several." Webster's defines "several" as "an indefinite number more than two and fewer than many." *Webster's Third New International Dictionary* 2080 (sense 4) (1986 ed.); *see also United States v. Maciaga,* 965 F.2d 404, 407 (7th Cir.1992) ("We have discovered no cases where 'more than minimal planning' was applied to fewer than three repeated acts.") We therefore hold that two instances of behavior, standing alone, do not constitute "repeated acts" for purposes of applying the "more than minimal planning" increase under the Sentencing Guidelines.*

---

* Were we to hold that the "more than minimal planning" enhancement was properly applied in this case we would then squarely face the issue

whether application of both that enhancement and the enhancement for leadership role in the offense constitutes impermissible double-count-

In so holding, we do not in any way question the conclusion that even one instance of behavior may be found to justify a two-point increase for more than minimal planning where there is evidence that the crime committed involved "more planning than is typical for commission of the offense in a simple form," or where affirmative steps were taken to conceal the crime, as provided in the commentary to section 1B1.1 and the examples therein. We merely hold that where, as here, the district court does not find such planning or concealment and bases the two-point increase solely on the "repeated acts" language of the Guidelines, there must have been more than two instances of the behavior in question. Accordingly, as the district court did not find that the thefts involved "more planning than is typical for commission of the offense in a simple form," we hold that the district court erred in applying the two-point increase for more than minimal planning.

 Mr. Bridges also objects to the application of the two-point increase for his role in the offense. The Guidelines provide for a two-point increase if the defendant was "an organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). The Commentary to that section provides that the defendant's status is to be determined after considering factors such as the recruitment of accomplices and the claimed right to a larger share of the fruits of the crime. U.S.S.G. § 3B1.1, comment. (n.3).

The district court found that Mr. Bridges recruited accomplices and received a greater share of the fruits of the crime. (R. Vol. IV at 13.) This is a factual finding subject to review under the clearly erroneous standard. After reviewing the briefs, the transcript of the sentencing hearing, and the rest of the record on appeal, we conclude that the district court's finding on this matter was not clearly erroneous.

We therefore REVERSE the district court's application of a two-point increase for more than minimal planning under U.S.S.G. § 2B1.1(b)(5), and we AFFIRM the district court's application of the two-point increase for role in the offense pursuant to U.S.S.G. § 3B1.1(c). We REMAND for resentencing in accordance with this opinion.

ing of the same conduct. *Compare United States v. Romano,* 970 F.2d 164 (6th Cir.1992) (holding that application of both enhancements constitutes double-counting) *with United States v. Willis,* 997 F.2d 407 (8th Cir.1993), *and United States v. Rappaport,* 999 F.2d 57 (2d Cir.1993) (*contra* ). In *United States v. Lowder,* 5 F.3d 467, 472 (10th Cir.1993), we distinguished *Romano* without deciding the issue. Because we hold that the district court improperly applied the "more than minimal planning" enhancement in this case, we leave the issue of double-counting for another day.